[Civ. No. 26196. Second Dist., Div. Two. Dec. 12, 1962.]

RUBY M. CRONK, Plaintiff and Appellant, v. KENNETH P. CRONK, Defendant and Respondent.

A. P. G. Steffes and George E. Atkinson, Jr., for Plaintiff and Appellant.

Neale Scott for Defendant and Respondent.

FOX, P. J.—In this divorce case the trial court granted a divorce decree to each of the parties on the ground of extreme cruelty. Plaintiff has appealed. She challenges particularly: (1) certain aspects of the property award; (2) the provisions for her support and that of the minor child; and (3) certain of the court's findings.

The court awarded plaintiff: (a) the family home valued at $25,000; (b) the furniture and furnishings thereof valued at $5,000; (c) a 1957 Pontiac; (d) insurance policies on the life of plaintiff and the minor child; (e) bank accounts standing in plaintiff's name; (f) all U.S. savings bonds in the name of either party which are in the possession of plaintiff; (g) a promissory note payable to defendant and signed by Wayne Gibson, on which there is an unpaid balance of $1,500; (h) $5,000 cash payable forthwith; (i) $125,000 payable in installments of $5,000 or more, plus interest, each six months, on August 1 and February 1 of each year, commencing August 1, 1961, and continuing until paid in full, the unpaid balance to bear interest at 5 percent per annum. This item represents the value of 2,694 shares of "Touch-Plate Mfg. Co.," which

was plaintiff's community interest in the stock of said company, the court having found that the community property included 5,387 shares of this corporation and having awarded 2,693 shares to defendant. The arrangement with respect to this particular item is set out in the footnote.[1]

The court awarded to defendant, in addition to the 2,693 shares of Touch-Plate stock: (a) a 1950 Pontiac; (b) certain photographic equipment; (c) the contents of his gun cabinet; (d) certain policies of insurance which, however, were pledged to secure the payment of the $125,000 to plaintiff mentioned above (see footnote 1); and (e) certain enumerated savings accounts.

The court awarded plaintiff $300 per month alimony, pay-

---

[1] "As security for the payment of the aforesaid $125,000.00, the parties are ordered and directed to open an escrow with the Bank of America and deposit therein a promissory note in the principal sum of $125,000.00, payable in installments as aforesaid, with interest on the unpaid balance as aforesaid, secured by a lien on 2,694 shares of Touchplate stock, which shall also be deposited in said escrow together with Life Insurance Policy No. 586948 of California-Western States Life Insurance Company on the life of defendant in the principal sum of $15,400; (G.I.) National Service Life Insurance Policy in the principal sum of $10,000.00; and Travelers Life Insurance Company Policy No. 1811747 on the life of defendant in the principal sum of $3,000.00. Defendant is ordered to name plaintiff as the beneficiary of each of said three life insurance policies, and to pay when due all of the insurance premiums due on said policies; said policies to be subject to the aforesaid lien and to remain in said escrow until the entire sum of $125,000.00, with interest, is paid. Defendant is also ordered to make the necessary arrangements with the insurance companies involved to inform plaintiff, and/or her agents, of any failure to pay premiums due on said insurance in order that plaintiff may do so during the grace period.

"As each installment of said promissory note is paid defendant will be entitled to withdraw from said escrow, free and clear of said lien, a pro rata share of said 2,694 shares of stock and upon the withdrawal of said shares from said escrow said shares shall become the sole and separate property of the defendant. During the period of time that said shares of stock are in said escrow and subject to the aforesaid lien defendant shall be entitled to exercise the voting rights of said stock and to receive as his sole and separate property any and all dividends on said stock.

"Upon payment of the entire promissory note, with interest, defendant shall be entitled to withdraw from said escrow each of the aforesaid three policies of life insurance, change the beneficiary thereof, and shall be entitled to own said policies as his sole and separate property. By the aforesaid arrangement, the Court intends that said life insurance shall always act as a cushion for the payment of the aforesaid monies to plaintiff until the entire amount is paid.

"In the event of a default by defendant in any of the foregoing terms of said escrow, the entire remaining balance of the promissory note, and any unpaid interest, shall become immediately due and payable, and plaintiff will be entitled to foreclose said lien for said entire remaining unpaid balance, with unpaid interest."

able on the first of each month, commencing May 1, 1961, and continuing until she remarries or dies, but in no event to exceed 126 months. It is further provided that "the aforesaid award of alimony shall not be diminished by the possible employment of the plaintiff in a gainful occupation."

The court awarded the custody of the minor child to plaintiff and ordered defendant to pay $175 per month for the support and maintenance of said child. This order contains the further provision: "In fixing said sum of $175.00 per month, the Court assumes that at least $100.00 per month will be required by said child for medical, psychiatric and educational purposes. Any sum required by said child in excess of said sum shall be paid by plaintiff from her own resources."

Plaintiff's initial argument is that the court erred in failing to find the value of the Touch-Plate stock and certain other items of community property. She argues that by its failure to fix the value of the entire 5,387 shares of stock that the community owned in the Touch-Plate Manufacturing Company, the trial court made it impossible to ascertain what amount of money would be equal to one-half the value of that stock. Consequently, she says, the findings are fatally defective and that the failure to find on this point constitutes prejudicial error.

In making this argument plaintiff overlooks the effect of what the court did with respect to this stock which constitutes the major community asset. Actually, the court awarded defendant 2,693 shares of said stock. This left 2,694 shares for the plaintiff. The court then proceeded to provide for the sale of plaintiff's interest to defendant. (See *supra,* and footnote 1 for details.) Thus we have in effect an equal division (except for the odd share) of the Touch-Plate stock between the parties. The court then determined the value of the stock that plaintiff was entitled to and set up the machinery by which she would be paid the value so determined over a period of years and further provided for security for such payments. (See footnote 1.) It is true that the court does not, in its findings, state the value per share that it used in determining the value of the stock. But in his memorandum opinion, the trial judge stated: "The court further finds that such stock has a reasonable market value of $45. per share." This figure was apparently based upon Mr. Cronk's testimony that "at the present time and with the present management, I would say that probably $45 would

be a fair market value." Mr. Balser, the court-appointed accountant, testified the book value of the stock on January 31, 1961 (approximately two months before the trial) was "about $38.60 a share." It therefore does not appear that the court's evaluation of this stock was not fair and reasonable. It is thus apparent that there is no merit in plaintiff's contention that the court erred in failing to find the value of the Touch-Plate stock.[2]

As to the other items of community property, it will be recalled that the court awarded the family home to plaintiff and fixed its value at $25,000 and also awarded the furniture and furnishings thereof to her and fixed the value of these items at $5,000. But, says plaintiff, the court failed to find the fair market value of (1) two automobiles; (2) United States savings bonds in the names of both plaintiff and defendant; and (3) items of personal property described in paragraph 2(c) of the findings of fact. As to the two automobiles, it will be recalled that the court awarded to plaintiff the 1957 Pontiac and to defendant, the 1950 Pontiac. Obviously she has no complaint as to these items. As to the savings bonds, the court awarded plaintiff all such bonds in the name of either party that were in the possession of the plaintiff. It does not appear that any United States savings bonds were awarded to defendant. Paragraph 2(c) of the findings relates to moving picture equipment, defendant's personal photograph album and scrap book of auto racing, war trophies, guns, army clothing and equipment, and personal gifts. It is obvious that most of these items were of a personal nature and belonged to defendant. Certainly the court was not called upon to place a value on each of the other items. (Lamb v. Lamb, 131 Cal.App.2d 489, 496 [280 P.2d 793]; Pope v. Pope, 102 Cal.App.2d 353 [227 P.2d 867].)

 There was no prejudicial error in the failure of the court to find the cash surrender value of the insurance poli-

---

[2]In an attempt to show that plaintiff was "short changed" in fixing the value of her share of the Touch-Plate stock, her counsel points to the comment of the trial judge during argument on the motion for new trial, that he computed its value at $50 per share. This was two and a half months after the judge had filed his memorandum opinion in which he had stated: "The court further finds that such stock has a reasonable market value of $45 per share." The discrepancy is undoubtedly due to the court's inadvertent failure to recall precisely Cronk's testimony, quoted supra, that its fair market value was probably $45 per share for the judge indicated he was using the figure that Cronk had used and that was $45.

cies on defendant's life since plaintiff has a substantial contingent interest in said policies by reason of the fact that they are required to be deposited in the escrow as security for the payment of the $125,000 to plaintiff by defendant (see footnote 1), during which time defendant is required to pay the premiums thereon. Certainly plaintiff cannot complain because the court failed to find the cash surrender value of the policies on her own life and that of the minor child.

In his memorandum opinion, the trial judge stated: "In arriving at a division of the community property, it is the intention of the court to award plaintiff something more than 50% of such property." Taking into account the award to plaintiff of the home valued at $25,000; the furniture valued at $5,000; the 1957 Pontiac; the Gibson promissory note; $5,000 cash; and $125,000 payable and secured as above noted, for one-half of the community interest in the Touch-Plate company stock, seems to clearly indicate that the trial judge succeeded in carrying out his expressed intention of awarding to plaintiff "something more than 50%" of the community property. *Villafuerte* v. *Villafuerte,* 125 Cal. App.2d 466 [270 P.2d 526], *Breedlove* v. *Breedlove,* 161 Cal. App.2d 712 [327 P.2d 170], and similar cases relied on by plaintiff are so different in their factual situations from the case at bench that they are of no assistance.

In this connection plaintiff makes a further unmeritorious contention that the court erred grievously when it deprived her of her "vested right to one-half of the Touch-Plate stock." It is her theory that she was rightfully entitled to the stock rather than the $125,000 as a fair market value thereof. The answer to this contention is found in the following statement from *Dallman* v. *Dallman,* 164 Cal. App.2d 815 [331 P.2d 245], at page 819:

"An award of money in lieu of a specific interest in community property is a proper method of distribution of the property and is a matter to be determined in the sound discretion of the trial court." We find nothing in the record to indicate any abuse of discretion on the part of the trial judge in the instant matter.

There is no merit to plaintiff's contention that the court prejudicially erred in failing to find the dates on which the various bank balances were found to exist. It is intimated that the bank balances related to the date the com-

plaint was filed, namely, September 12, 1958. It is then argued that plaintiff would have been entitled to her share of the income from such accounts from that time until the judgment was entered April 20, 1961.

Guy S. Balser, a public accountant, was appointed by the court to make an accounting of the assets of the parties. He furnished such report under date of March 17, 1961, and appeared as a witness at the trial. His testimony discloses that the balances in the bank accounts and savings accounts were included in this report. There is also testimony from representatives of some of the financial institutions giving the court the current balances of certain of the accounts in question. It is thus apparent that the court had before it information concerning the various balances of these accounts as late as approximately ten days prior to the trial.

Plaintiff unpersuasively argues that the court abused its discretion (1) "in awarding the 686 shares of Touch-Plate stock to the co-respondent"; and (2) in finding that respondent "did not commit adultery" with the corespondent. Both of these questions are essentially factual and largely depend upon whom the trial court believed and the inferences to be drawn from the evidence. Counsel for appellant seems to concede the application of these principles with respect to the award of the stock to the corespondent for he says in "our humble opinion" neither the corespondent nor the respondent "made a satisfactory showing of the factual basis supporting the co-respondent's right to such shares of stock" and later stated "It is difficult to understand how and why the trial court placed any credence whatsoever on the testimony of either respondent or the co-respondent that the stock belonged to the co-respondent and not to the community." With this concession it does not appear necessary to delineate the evidence touching corespondent's acquisition of the 686 shares of Touch-Plate stock. Suffice it to say that it cannot be said as a matter of law that there is not substantial evidence to support the trial court's finding as to the ownership of this stock.

No useful purpose would be served in detailing the evidence that was introduced on the question of adultery. It was clearly sufficient to sustain the trial court's factual determination of that issue.

Plaintiff complains that the court abused its discretion in the amount awarded for the support and maintenance of (1) the child; and (2) the plaintiff. The court awarded $175

a month for the care of the child, stating that the court assumed that at least $100 per month would be required by said child for medical, psychiatric and educational purposes, and then provided that any sum required by said child for such purposes in excess of $100 per month shall be paid by plaintiff from her own resources. The court awarded plaintiff $300 per month alimony, commencing May 1, 1961, and continuing until she remarries or dies but in no event to exceed 126 months. In this connection the court further provided that "the aforesaid award of alimony shall not diminish by the possible employment of plaintiff in a gainful occupation."

It is hornbook law that the amount to be awarded for the care, support and education of a child and as alimony are within the discretion of the trial court. (16 Cal.Jur.2d, § 279, p. 574.) The basis for arguing that the allowance for the support and maintenance of the child is inadequate is because she apparently received an injury at birth from which she has not recovered and as a result of which, she will need special care and treatment. The trial judge obviously took this situation into account as indicated by the order he made. He had the opportunity to and did see and talk to the child and was therefore in a better position to evaluate her condition than we are from the cold record. We cannot therefore say that the court abused its discretion in making this award for the care and support of the child, particularly since it is subject to the further order of the court upon an appropriate showing.

It certainly cannot be said as a matter of law that the court abused its discretion in making the alimony award for the support and maintenance of plaintiff in view of the amount of property she was awarded and the income that she will have from the sale of her share of the Touch-Plate stock.

Plaintiff's final contention is that the court abused its discretion in denying her motion for a new trial. The law is settled that the granting or denying of a new trial rests largely in the discretion of the trial court; that in such matters it has a wide discretion; that every presumption is indulged in support of the court's determination and that such determination will not be disturbed on appeal unless it affirmatively appears that the court abused the sound discretion vested in it. (36 Cal.Jur.2d, New Trial, § 13, pp. 145, 147.) Examination of the record in the instant case does not indicate any abuse of discretion. No fact or reason

is asserted as a basis for believing that another trial might terminate with different results. ▮ "New trials cannot be ordered merely because a dissatisfied litigant requests it." *(Newman* v. *Los Angeles Transit Lines,* 120 Cal.App.2d 685, 693 [262 P.2d 95].)

The judgment is affirmed.

Ashburn, J. and Herndon, J., concurred.