[Civ. No. 38036. Second Dist., Div. Five. Nov. 19, 1971.]

In re Marriage of LOREA ETHEL and EMILE MILAN JUICK.
LOREA ETHEL JUICK, Respondent, v.
EMILE MILAN JUICK, Appellant.

COUNSEL

Everett H. Smith for Appellant.

Patten, Faith & Sandford and Emmett E. Patten for Respondent.

OPINION

**REPPY, J.**—This action involves an interpretation of Civil Code section 4800, part of the Family Law Act of 1969, dealing with the division of community property upon dissolution of marriage. The record before us is the clerk's transcript only, which includes findings of fact, conclusions of law and judgment. There is no reporter's transcript. The litigation started in

April 1969 as a divorce action. It was converted to a proceeding for dissolution of marriage by reason of the intervention of the Family Law Act which became effective January 1, 1970. A trial was conducted January 7, 1970. Proposed findings of fact were submitted in February 1970 as to which objections were filed. These were ruled upon April 21, 1970, some being sustained. The revised findings of fact and conclusions of law, with one amendment endorsed on the face to meet an objection, were executed and filed May 25, 1970.

Among other things the trial court found that the parties had been married a little over 10 years and had two children, a son aged about 9 years and a daughter about 7 years at the time of judgment; that irreconcilable differences had arisen between the parties such that the legitimate ends of marriage could not be accomplished; that the wife[1] was the proper person to have custody of the children; that the wife, although having the ability to support herself, was without sufficient funds or property to support the children; and that the husband had the ability to pay reasonable sums therefor.

With respect to the extent of the community property, there is material in the findings of fact and in conclusions of law which is in the nature of findings bearing on the subject. From this material, it is ascertained that the trial court found that the following listed items were community property and had the following stated values and encumbrances: a home valued at $18,000 encumbered by a first deed of trust on which the balance owed was $10,407, leaving an equity of $7,593; a Mercury automobile having a value of $1,600, encumbered but with the amount of encumbrance not stated; a Chevrolet automobile having a value of $750, with apparently no encumbrance; household furniture and furnishings, including utensils and rugs and carpets, having a value of $600, encumbered but with the amount of the encumbrance not being stated; a National Service life insurance policy on the husband, having no value. In addition, it is to be considered that the court found that the wife had made a contract payoff on some carpets and rugs in the amount of $521, there being no indication, however, of the source of said funds.

From these findings the trial court made the following conclusions which were carried into the interlocutory judgment: that the wife should be granted an interlocutory decree dissolving the marriage; that the wife should have custody of the children with certain reasonable visitation rights given

---

[1]We use the terms wife and husband as the most convenient and least confusing way to identify the parties. We recognize, of course, that they are no longer husband and wife.

to the husband; that the husband should pay $20 per week per child for their support; that, by implication, there should be no spousal support; that husband should pay $200 attorney fees at the rate of $20 per month; and that the community property should be awarded, the encumbrances assumed, and an adjusting payment made as follows: (a) the Chevrolet automobile and the life insurance policy to the husband; (b) the home, furniture and furnishings and Mercury automobile to the wife with her paying the respective encumbrances thereon; (c) the wife to pay to the husband for his share of the equity of the parties in the home the sum of $4,250 at the rate of $40 each month commencing February 1, 1970, with a lien on the real property to secure the payment of said sum to be paid off at the time of any subsequent sale from the proceeds or from personal funds of the wife if necessary.

The husband appealed from the ensuing judgment. Essentially, his contentions on appeal are: (1) that some essential findings of fact were not made, including, in particular, one concerning the economic circumstances of the parties; (2) that the division of the community property was not substantially equal, due principally to the fact that no provision was made for interest or for meeting the effects of inflation; (3) that the division of community property was not immediate; and (4) that there should have been additional protective devices for the husband in connection with the wife's obligation to pay to him the value of his equity in the house.

IMMEDIATE DIVISION

With respect to the husband's argument for an immediate division of community property, it is not clear whether he has a fundamental contention that there can be no extended delay of enjoyment of an asset, making installment payments of a money equivalent for an interest in a community asset practically impossible, or whether he makes the point that if such installment payments are provided for, a substitute for immediate enjoyment should be included by way of interest and, possibly, a hedge on the effects of inflation. If the first concept is intended, the following observations are pertinent: The word "immediate" is not contained in section 4800 dealing with property division. Although it has been used in a Continuing Education of the Bar publication[2] (Freeman, Hogoboom, Macfaden, Olson, Attorney's Guide to Family Law Act Practice (Cont.Ed.Bar) § 4.10, p. 163), it is clear that it is utilized there in the sense of a division effective at the time of the

---

[2] The mentioned Continuing Education of the Bar work states: "The Family Law Act effects an important procedural change in the area of property division by providing statutory authority for immediate division of the community . . . property in the interlocutory judgment. . . . [citing Civ. Code, § 4800]." (P. 163.)

interlocutory judgment under all circumstances, rather than only if such a time for division was unchallenged as ruled in *Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 214 [259 P.2d 656].[3] We take it that section 4800 was intended to eliminate any problem of the type dealt with in *Gudelj*.

If the husband's contention with respect to delay of enjoyment is confined to his second point, it can be said that it is an integral part of the subject of alleged inequality of division of community property and did not have to be separately stated. It is dealt with in our treatment of that contention.

### ALLEGED INCOMPLETENESS OF FINDINGS

■ It appears that one assertion is that the trial court neglected to make complete findings concerning the value of certain items of property and the amount of encumbrances thereon. With respect to the home, these factors sufficiently appear in a combination of the material contained in the findings and in the conclusions. With respect to the personal property, the findings are deficient in failing to indicate the amount of the encumbrance existing as to the Mercury automobile, the amount of the encumbrance on the furniture and furnishings, and by what means a portion of such encumbrance (one on rugs and carpets) was paid off. In order for a reviewing court to gauge whether or not an equal division of community property has been achieved, it is necessary that explicit values and exact amounts of encumbrances be shown in the findings. (*May* v. *May*, 275 Cal.App.2d 264, 275, 277, 279 [79 Cal.Rptr. 622]; *Hong* v. *Hong*, 237 Cal.App.2d 239, 241 [46 Cal.Rptr. 710].) Although, in cases where the evidence as to values is sufficient, the defect in the findings may be remedied by the appellate court or the case may be remanded for the rectification of findings (*May* v. *May, supra,* p. 279, citing *Hong* v. *Hong, supra,* and *Perry* v. *Jacobsen,* 184 Cal.App.2d 43, 50 [7 Cal.Rptr. 177]); since, in the instant case, there is no evidence before this court, the only alternative is a remand to the trial court for its augmentation of the findings.

The husband urges that the trial court made no finding concerning economic conditions to meet the requirement of the provision in section 4800 subordinate to its principle proposition of a mandatory equal division of community property which authorizes the award of an entire item (like a

---

[3]The effect of this decision passed into a somewhat unsettled state as a result of the issuance of *Fritschi* v. *Teed,* 213 Cal.App.2d 718, 725 [29 Cal.Rptr. 114] and *Decker* v. *Occidental Life Ins. Co.,* 70 Cal.2d 842, 845-846, 848 [76 Cal.Rptr. 470, 452 P.2d 686] (see particularly the dissent on p. 849). (Compare *Weinberg* v. *Weinberg,* 67 Cal.2d 557, 566 [63 Cal.Rptr. 13, 432 P.2d 709].)

home) to a particular spouse where economic circumstances warrant it. Apparently he has in mind a finding (from the wife's standpoint, if supportable) along the lines that it would be financially disadvantageous for the house to be sold (to allow equal division of its value) and for the wife to secure new shelter by purchasing or renting.

In the absence of an evidential record, we probably could presume that the trial court had before it, by way of testimony or of judicial notice properly taken (Evid. Code, § 452), items of evidence leading to that ultimate fact, such as market conditions, the cost of selling the asset, the expenses of acquisition of a replacement facility, and the eligibility of the wife for such advantageous factors as a veteran's or F.H.A. financing. If we made the presumption we might then imply from it and from findings which the trial court has made (*Goldberg* v. *Paramount Oil Co.*, 143 Cal.App. 2d 215, 223 [300 P.2d 329]) the so-called missing finding. However, since the case must be remanded for other augmented findings, it will be more convenient and appropriate for the trial court to make findings in this area. If it is necessary for it to take judicial notice of certain circumstances to do this, and it has not already done so, it should comply with the requirements of section 455 of the Evidence Code.

### EQUAL DIVISION OF COMMUNITY PROPERTY

With respect to the husband's contention that he has not received an equal division of the community property, we must first note certain deficiencies in the record. It cannot be ascertained of what the $4,250 payment to be made by the wife to the husband is comprised. It is not one-half of the equity in the house; that one-half is $3,796.50. We do not know for sure whether the trial court was having the wife pay the husband the money equivalent of a proportion of the equity in the house greater than one-half with no equalizing payments related to personal property, or whether the additional $453.50 was precalculated interest on $3,796.50 or was a sum figured to equalize the equity in personal property after considering the encumbrances. We also do not know whether the $521 shown in the tabulation in the conclusions of law as a reduction of the total award to the wife by reason of it having been paid by her on the carpets and rugs was or was not the total encumbrance against the furniture and furnishings and was paid from community monies held by the wife or from some separate funds she might have had. If it was the former, it should not have been utilized to show a reduction of the award to the wife. These uncertainties should be corrected upon remand of this case.

The husband appears to contend first that where payment of a money equivalent of half of value is to be used as the condition to an award to one

spouse of an entire asset exact equality can be reached even where deferred installment payments are to be made by providing for interest in a proper amount and a hedge on inflation[4] and substantial equality should not be sufficient. Alternatively, he contends that even if substantial equality is the proper criterion, this was not achieved because the mentioned devices were not used.

■ In examining this aspect of the case, we first observe that it is clear that the fundamental objective of the Legislature with respect to the disposition of community property upon dissolution of a marriage was to provide for an equal division thereof as an additional way of advancing its primary no-fault philosophy.[5] In that respect, subordinate clause (1) is not to be considered an independent legislative provision making economic circumstances, as was fault in the past, a basis for a certain amount of unequal division of community property. (Cline, *California's Divorce Reform: Its Effect on Community Property Awards* (1970) 1 Pacific L.J. 310, 316, including fn. 32, and 318-319.)[6]

Under the Family Law Act clearly the ideal is a mathematically equal division.[7]

---

[4]As to the latter, the husband's suggestion is that with the passage of time and the impress of inflation (expected to occur in line with a long and unvaried course of economic history) the value of the use of the home to the wife would increase whereas the value of the use of the money payments to the husband would decrease. He, perhaps, has in mind keying the amount of monthly payments to a cost-of-living index. For example the husband's suggestion might envision a direction that there would be paid over certain specified periods in the future (such as yearly or semi-yearly intervals) such sum (either upward or downward) as would represent what was the purchasing power of $40 in May of 1970.

[5]It is to be noted that fault also is not to govern spousal support or attorney's fees. (Comment (1971) 4 Loyola L.A.L.Rev. 331, 351, 334 (fn. 18).)

[6]"Following [the] equal division provision are two sub-provisions which appear, at first glance, to be exceptions to the equal division provision. They are not exceptions but methods by which equal divisions may be effected. [¶] The first allows the court 'where economic circumstances warrant [to] award any asset to one party on such conditions as the court deems proper to effect a substantially equal division of the property.' [¶] This provision allows the court to make an equitable allotment of the income-producing asset without forfeiture of its income-producing potential [or of a shelter asset without forfeiture of its economic advantage to the spouse and children unit]. . . . It is important to note, however, that although the method of division is left to the court, the substantially equal division requirement is still present. Thus, where one party is given a large community asset, the court must provide for eventual reimbursement to the other party. Therefore, this is not an exception to the equal division requirement."

[7]This is deducible from the history of section 4800. In 1958 the Court of Appeal in *Dallman* v. *Dallman*, 164 Cal.App.2d 815, 822 [331 P.2d 245], in referring to the concept of division of property based on fault, said: "[I]t seems far better that there be some division . . . so that the financial difficulties may in the long run

When a trial court utilizes the single asset proviso in the manner chosen in the instant case (awarding an entire asset to one spouse and directing that that spouse pay the other the money equivalent of his one-half interest therein over a period of time in installments secured by a lien), in one sense, the trial court is making a division of the asset by giving one spouse an equity and the other an encumbrance in it; but in another sense, it is causing one spouse to presently receive the entire community asset and to turn over to the other spouse certain non-community assets to be acquired in the future. Although we do not believe that this method is to be ruled out as one of the conditions contemplated in the single asset proviso, we feel that the proviso's primary contemplation was for the trial court to deal with other existing community assets in working out its conditions. This was why it injected the concept of substantial equality. Exact equality might not be achievable using existing community assets. When monies to be acquired by one's spouse in the future are injected as an element, there is no reason why the effort should not be made to reach mathematical equality[8] where a variance in time of enjoyment creates an economic differentiation between

work out for the best interests of all concerned." (See Cline, *California Divorce Reform: Its Effect on Community Property Awards*, 1 Pacific L.J. 310, 314.) In 1966 the Report of the Governor's Commission on the Family (p. 46), indicated that it was its consensus "that the court should have resort to conduct affecting the financial status and assets of the marriage, and should make inquiry into the prior economic dislocation of any community assets," and "that conduct unrelated to the finances of the marriage should not . . . influence the division of the marital property. . . ." (See Cline, *California Divorce Reform: Its Effect on Community Property Awards, supra*, at pp. 310, 316.) The report of the State Bar committee, which the Legislature had under study, recommended that the trial court be enabled to make other than an equal division of the property, not punitively, but "where the court finds that such is warranted . . . in such proportion as it deems just." (Report of Committee on Family Law on the Family Court Act, Sen. Judiciary Com., January 1969, Exhibit A, Rev. No. 51; as cited in Krom, *California Divorce Law Reform: An Historical Analysis*, 1 Pacific L.J., p. 174.) The writer in the Pacific Law Journal says that "While the introductory note [by the State Bar committee] indicates that [its recommendation] . . . was intended to apply where one party had depleted the community property or could not be relied upon to fulfill support obligations, it was later understood that the existing language of the proposal would unduly broaden the judge's discretion." (Krom, *California Divorce Law Reform: An Historical Analysis, supra*.) The original and first-amended versions of the legislative bill followed the State Bar's recommendation that provision be made to allow an unequal division when such was warranted in the eyes of the court under the economic needs of the parties, the thought of the governor's commission. On the fourth amendment, the language was changed to require equal division of the property "insofar as the court finds it practicable." (Cline, *California Divorce Reform, etc., supra*, pp. 316-317.) However, significantly to us, this language was eliminated in the final version in favor of the equal division of property in all cases with the subordinate single asset proviso.

[8]If there is on hand separate or community cash sufficient of itself or along with other assets of a tangible nature, there is no reason why mathematical exactitude cannot be achieved.

the value of a single tangible asset and its money equivalent, by way of requiring the payment of interest at a proper rate.[9]

Giving consideration to the circumstances in the instant case, it might be that the trial court intended that the $4,250 the husband was to receive was all a principal sum, being either the money equivalent of somewhat more than one-half of the equity in the house or the money equivalent of exactly one-half of that equity plus one-half of the equity in the personal property (a figure which we cannot authenticate from the record), payable to the husband without interest. We have had it calculated that if this sum plus predetermined interest at 6 percent per annum[10] were to be paid off at close to $40 per month ($39.31 to be exact) it would take 13 years (rather than 8 years and 10 months). The total interest would amount to $1,882.36, making the total sum to be paid off at $40 per month about $6,132.

If the concept of the trial court was to use just one-half of the equity in the house ($3,796.50) as the principal the husband would be receiving, then the $453.50 difference might be considered in the interest category, and there would have been no equalizing arrangement by way of payment from future acquisitions for the money equivalent of the equity in the personal property.[11] As we see it, with respect to the equity of the house alone, the effect of the court's action under this concept would be to have caused the wife to buy out the one-half interest of the husband and to allow the husband only about 3 percent interest.[12]

It might be suggested that the trial court in its mind had achieved equality by making support payments higher than it otherwise would have. How-

[9]In the instant matter we would not recommend keying the amount of the monthly installments to a cost-of-living index because the matter of future value of the property is open to variables not contingent on the cost of living. Another feature as to which we feel there is no practical method for meeting the disadvantage is that the immediate receipt of a lump sum by a party (such as $3,796.50) usually is economically more advantageous to him than the receipt of this same sum in small amounts over a number of short intervals even if interest is paid thereon.

[10]Just as an example as far as the amount of interest is concerned.

[11]In this connection, we feel that once the trial court moves to the end of providing a cash payment from future acquisitions of a spouse, it should apply such a concept to all existing community assets being awarded so as to achieve as close to exact mathematical equality as the time differential and the use of interest will permit.

[12]Looked at another way, it might be said that the trial court was causing the husband to purchase with $3,976.50 an annuity from the wife ($40 per month for 8 years and 10 months) without, of course, the security of the financial integrity of a nationally recognized insurance company, although with the security of the equity of the property itself. We have ascertained from the representative of such an insurance company that if $3,787 were paid to it, it would pay an annuity to the annuitant (using a 3 percent interest factor) of $40 per month for 8 years and 10 months.

ever, it is to be noted that only child support payments are involved. No spousal support was ordered. The wife points to a suggestion in the legislative history that support payments might be utilized in the process of equalization. In the Journal of the Assembly for the regular session of 1969 (pp. 8061-8062) the example of the award of a going business as a single asset is presented.[13] With respect to this, it is said: "[H]owever, the court could award the entire business to the husband and grant the wife her one-half interest in cash or give her a greater share of other property or a greater support allowance." (P. 8062.)

We are satisfied that the Assembly was referring to spousal support. We do not feel that child support should be so utilized. It is our position that the equal property division envisioned by the Legislature in section 4800 should be worked out first and then child support should be set based upon the financial circumstances of the parties which would then pertain.

We feel that upon remand it should be left open to the trial court to withdraw from the installment scheme if it so desires. Thus it could order the sale of the premises; or it could direct its refinancing so as to give the husband as much cash equivalent as possible immediately with installments as to the balance; or it could adhere to the full installment plan and increase the amount to equalize not only the house equity but the personal property equities and include precalculated interest at a proper rate.

The husband further contends that the trial court failed to set up sufficient

---

[13]The Journal of the Assembly for the regular session 1970, volume 1 at pages 787-788 provides an additional example of intended use for section 4800, subdivision (1) (the single asset proviso) which specifically deals with a family residence. It is of interest although it does not deal explicitly with the problem of delayed installment payment. Pertinent portions thereof read as follows: "Where an interest in a residence which serves as the home of the family is the major community asset, an order for the immediate sale of the residence in order to comply with the equal division mandate of the law would, certainly, be unnecessarily destructive of the economic and social circumstances of the parties and their children. . . . Where a home with some equity value and its furnishings constitutes the main property subject to division, where there are minor children and where neither party has substantial separate property, the court, in accordance with Section 4800(1), could make a conditional award of the residence to the wife if she is awarded custody of the children. There is little question that economic circumstances would warrant the application of the first exception to the equal division requirement, and it was so intended. The conditions the court might impose are many and varied. For example, the wife might be given a lesser amount of support, or the husband might be given a lien upon one-half of the community property value of the home and that lien value could be transferred to any new home the wife might acquire while she has custody, and so on. The point is that economic circumstances are involved and the court was intended to have the power to innovate in making conditional awards of property. That is an important power which gives the opportunity for just application of the law under the circumstances, and it should not be overlooked."

protective devices in his behalf. One of his concerns is about the possibility that his wife would further encumber the property, apparently in a manner which would take precedence over his lien. We cannot tell from the findings whether the first deed of trust provides for future advances. Perhaps it should be presumed that it does not in light of the fact that the husband has not provided a record by which a determination either way could be made. However, the trial court, on remand, undoubtedly will have or can get the accurate information, and, if appropriate can make an order prohibiting the wife from borrowing on the property under a future advance clause, if such exists.

The husband finally contends that the trial court should have made provision for acceleration under certain circumstances. In his appellate brief he mentions remarriage. In the objections filed with the trial court such factors as default by wife in payments, discontinuance of occupancy for renting, gift, and transfer were put forward. We cannot say, as a matter of law, that the trial court abused its discretion in not providing for acceleration under such circumstances; however, it should be free upon remand to reconsider the factors of default, remarriage, and discontinuance of occupancy for renting among any others which may be pertinent. These would have considerable significance if, as the husband suggests in certain objections presented to the court below, the first deed of trust is not a purchase money encumbrance.

The husband requests that this court remake the findings and conclusions under the power authorized by article VI, section 11, of the state Constitution and section 909 of the Code of Civil Procedure. He might also have referred to section 4810 of the Civil Code providing that the "disposition of the community property . . . is subject to revision on appeal in all particulars, including those which are stated to be in the discretion of the court." However, for the reasons mentioned above, the instant case does not lend itself to the utilization of this prerogative. The remand to the trial court is the proper solution.

The judgment insofar as it deals with the division of community property is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Stephens, Acting P. J., and Aiso, J., concurred.