[Civ. No. 51112. Second Dist., Div. Three. Apr. 26, 1978.]

In re the Marriage of ANN L. and JOHN K. BRIGDEN.
ANN L. BRIGDEN, Appellant, v.
JOHN K. BRIGDEN, Appellant.

## COUNSEL

Barrett, Stearns, Collins, Gleason & Kinney and William N. Willens for Appellant Wife.

Ervin, Cohen & Jessup and Arthur Fields for Appellant Husband.

## OPINION

**COBEY, Acting P. J.**—Ann L. Brigden (hereafter Wife) and John K. Brigden (hereafter Husband) are cross-appellants from an interlocutory judgment of dissolution of marriage. (See Code Civ. Proc., § 904.1, subd. (j).) Both parties urge that the major issue upon appeal concerns that portion of the judgment disposing of 66,304 community-owned shares of stock in Logicon, Inc. (hereafter Logicon). The entire block of Logicon stock was awarded to Husband as his separate property. But one-half of this award, the 33,152 shares which represent Wife's equal interest in the stock, was awarded to Husband subject to conditions which are summarized below.[1]

---

[1]Husband must either purchase the shares representing Wife's interest or release them to her pursuant to a decreed schedule. The schedule provides for (1) disposition of 500 shares on or before December 31, 1976; (2) disposition of 1,500 shares on or before December 31, 1977; (3) disposition of 1,500 shares on or before December 31, 1978; (4) disposition of 1,500 shares on or before December 31, 1979; and (5) disposition of the remaining 28,152 shares on or before December 31, 1980.

The schedule, however, specifies only final dates upon which a minimum number of shares must be purchased or released. The order gives Husband the right to pay for or release to petitioner all or any part of these 33,152 shares at any time prior to the dates set forth in the schedule. The price to be paid for each share of stock is to be determined by the average market sales price during the month of November of the year of payment if the payment is made strictly according to schedule. If Husband elects to accelerate his payments to purchase shares ahead of schedule, the price to be paid is the average stock sales price on the date of accelerated payment. It is provided, however, that Husband

Wife contends that (1) the findings of fact relating to the award of the community-owned block of Logicon stock are based upon insubstantial evidence; (2) under the facts of this case, an equal "in kind" division of the Logicon stock is required; and (3) the division of community property that was made is not substantially equal. Husband, on the other hand, contends that it was improper for the judgment to place the risk of loss resulting from a decrease in stock value below $4 per share solely upon him.

We agree with Wife and, therefore, do not reach Husband's contention. We also do not reach Husband's and Wife's additional contentions with regard to the award of various other community assets, the award of spousal and child support, the retention of jurisdiction to modify the judgment, and the award of attorney's fees to Wife's counsel. The trial court indicated that the various portions of its judgment were interrelated and intended "to achieve some sort of a balance." The comprehensive nature of the court's judgment bears this out. Also, the value of the assets held by each spouse upon the termination of the marriage is a factor to be considered by the trial court in making its various determinations. (Civ. Code, §§ 4801, subd. (a)(2), 4806; *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41]; *In re Marriage of Juick* (1971) 21 Cal.App.3d 421, 430 [98 Cal.Rptr. 324]; *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 264, 266 [105 Cal.Rptr. 483].) Since we will reverse the judgment of the trial court with respect to the disposition of the major asset of the former community, we will remand this case to that court so that it may reconsider its judgment in light of this change.

FACTS

Wife and Husband were married June 17, 1953. Nineteen and a half years later, on December 2, 1972, they separated. The separation was permanent and on November 10, 1976, the judgment of dissolution of marriage under appeal was granted.[2]

---

shall pay at least $4 for each share of stock or, if he releases any shares to Wife when the average market price is less than $4 per share, he must make up the difference between $4 and the average market price. "No interest shall be paid by [Husband] on his obligation to pay [Wife] for her interest in the stock."

Unless and until Husband releases stock to Wife, Husband has complete control and voting power over all the Logicon stock, except that if he liquidates more than 33,152 of the shares of stock he must pay Wife for each share sold in excess of the said 33,152 shares. The judgment gives Wife no security for her interest in the stock.

[2]The apparent reason that three and one half years transpired between the separation of the parties and the dissolution of their marriage is that the parties were attempting to negotiate a property settlement during this time.

In 1961 Husband was one of eight persons who formed a. company named Logicon, Inc. At its inception Logicon's business was primarily systems engineering and work in the computer science field. But in recent years it has diversified and become involved in additional commercial activities such as manufacturing. Logicon has never lost money. It was founded with about $1,000 total capital and has "generally" grown "about 40 percent a year." Annual revenues at the time of trial had "grown to about 30 some million."

Husband has been on the board of directors of Logicon during its entire existence. He also is senior vice president of Logicon, a position which gives him responsibility for "the outside financial affairs of the corporation, with our liaison with our legal counsel, with corporate planning, long range planning, and in the general management of the corporation." All eight of the persons who founded Logicon were placed on its original board of directors, but only one other of the founders remains as a director.

Over the course of their marriage Wife and Husband acquired 66,304 shares of Logicon stock, which constitutes 7.6 percent of the 872,180 total shares of Logicon stock outstanding.[3] This is not a sufficient number of shares to guarantee Husband's election to the board of directors of Logicon or to assure that his position as senior vice president will not be terminated, but it is a useful power base. The community-owned shares have always been voted in favor of Husband's election to the board of directors of Logicon.

At the time of trial the Logicon stock was traded as an "over the counter" stock and had an approximate value of $4 a share. Logicon stock is now traded on the American Stock Exchange. Its value on March 1, 1978, was $13.75 per share. Its highest value over the 52 weeks prior to that date was $17.625 per share. Its lowest value over the 52 weeks prior to that date was $9 per share. As of the time of trial Logicon had never declared a dividend on its shares.

Wife requested at trial that the court award her one-half of the Logicon stock in kind. She testified that the primary reason she wants the stock is because she believes that it is a "valuable asset" which "should be more

---

[3]We take judicial notice of the total number of Logicon shares currently outstanding as well as these facts: (1) Logicon is currently traded on the American Stock Exchange; (2) the composite closing price per share as of March 1, 1978; (3) the Logicon 52-week high; and (4) the Logicon 52-week low. (See Evid. Code, §§ 459, subd. (a), 452, subd. (h).)

valuable in the future." She also indicated an interest in "possibly getting a place on the board of directors . . . to be able to participate and maybe help [her] investment grow." She said she thought her participation "would be an advantage to the company as well as an advantage to [herself]" due to the current absence of management level women at Logicon. But she was uncertain that she would become so involved.

Husband requested that all the stock be awarded to him. He testified that there were two reasons for his request. The first reason is that he had spent "virtually all [his] adult life" working for Logicon and felt as if Logicon was his company. It therefore is "important to [him] emotionally to own that stock." The second reason is that the stock gives him a power base. He testified, "I can't say this, that without the stock, if I didn't have the power base in the stock, it doesn't mean that I could get fired overnight nor if I have all the stock does that mean I will always keep my job. [¶] But its very helpful and important to maintain the political power base that I need to stay in that company."

There were insufficient community assets to offset the value of the award of the entire block of stock to Husband. Husband did not have the ability to compensate Wife, by access to his separate property or other sources of funding, for the award to him of her interest in the stock.

## Discussion

### 1. *The Findings of Fact with Regard to the Consequences of Awarding Wife her Interest in the Stock are not Supported by Substantial Evidence*

The findings of the trial court upon the consequences of awarding Wife her interest in the Logicon stock in kind may be summarized as follows:

(A) "[Wife's] expressed desire to receive, in kind, 33,152 shares of Logicon stock stems from her wish to extend the parties marital dispute into Logicon's board room and business affairs." If awarded this stock Wife would use it to interfere with Husband's "maintaining his positions as an officer and director at Logicon."

(B) If Husband lost his positions at Logicon, "[b]ased on his age and current business conditions, it is extremely unlikely that [Husband] could find comparable positions in the foreseeable future." He would therefore be unable to support himself or to pay spousal or child support.

(C) If the 33,152 shares representing Wife's interest in the community-owned stock were awarded to her in kind "[t]here is a substantial likelihood that [Husband] could not maintain [his] positions" with Logicon.

We agree with Wife's contention that there is no substantial evidence to support these findings. (See *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72-73 [64 Cal.Rptr. 785, 435 P.2d 553]; *Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54].) Our conclusions as to each finding will be discussed seriatim.

A. *Finding of Wife's Improper Motivation*

There is *no* evidence to support the trial court's finding that Wife desired to receive her interest in the community held stock in kind in order to extend the marital dispute into Logicon's board room and interfere with Husband's positions as director and senior vice president. As already noted, Wife indicated that she wished to keep the stock because of its value as an asset and her interest in participating in the future of Logicon. The only other evidence on the issue of her motivation is her testimony that she was "not requesting the stock out of a personal desire to harm or prejudice Mr. Brigden," that she "worked very hard to help him achieve the position he has. And [she] wouldn't want to jeopardize it." She also testified that she felt no "antagonism" toward her husband and that while their relationship was "very cool" it was not "bitter."

Since there is insubstantial evidence to support this finding of Wife's improper motivation (see *Krause* v. *Apodaca* (1960) 186 Cal.App.2d 413, 417-420 [9 Cal.Rptr. 10]) it is not binding upon us.

B. *Finding of Husband's Dependence upon His Position at Logicon as a Source of Support*

Husband was 45 years old at the time of trial. Beyond this no evidence appears in the record to support the finding that if Husband ceased to be employed at Logicon he would be unable to support himself or pay child and spousal support due to his age and current business conditions. There was no evidence received regarding "business conditions" and the employment prospects of a person of Husband's age and training. Further none of the evidence received upon Husband's personal history indicates that he would have difficulty finding alternative employment.

Husband holds both a bachelor's degree in electrical engineering from Cornell University and a masters degree in electrical engineering from the University of Pennsylvania. After leaving school he joined TRW and worked for five years as an engineer. He then left that company to participate in the founding of Logicon.

At Logicon his personal success matched the previously noted successful growth of the company. His initial position was that of secretary of the corporation and most of his initial responsibilities were technical—he did consulting engineering for the corporation. He then became a vice president and director of operations of a division which constituted about half of the company's total operations. After he had been with the company for approximately seven years he took over the position of chief financial officer of Logicon. In this position he was responsible for all the administrative, accounting, and financial functions of Logicon. He participated in a successful public offering of Logicon stock in 1969 and was concerned with various "in-house legal-type matters." After three years in this position he was promoted to his current position of senior vice president, "the number two" management position in the corporation. As has already been noted, in this position he is concerned with general corporate management and planning. In 1975 he conceived of certain transactions which, if allowed by the Internal Revenue Service, decrease Logicon's tax liability by $350,000. Over the three years prior to trial his yearly salary increased from $42,400 to at least $46,000. In each of these years he received a bonus—$5,000 in 1974, $12,500 in 1975, and $16,000 in 1976.

C. *Finding that Husband's Control over Entire Block of Community-Owned Stock is Critical to His Continuing as an Officer and Director of Logicon*

As previously noted, the community-held block of Logicon stock is not large enough to insure that its owner would be elected to Logicon's board of directors or that he would be retained as an officer. Also, there is no evidentiary basis for the court's finding that Wife would attempt to interfere with Husband's positions with the company. Finally, all the evidence shows Husband to be a highly valued employee of Logicon.

Unquestionably 7.6 percent of the total shares of a company constitutes a "helpful" power base. But as Husband explained upon direct examination, "I can't say this, that without the stock, if I didn't have the power base in the stock I could get fired overnight nor if I have all the stock does

that mean that I will keep my job." This is far different from the finding that "[t]here is a *substantial likelihood* that [Husband] could not maintain [his] positions if he were divested of 33,152 shares of the stock by an award of same in kind to [Wife]." (Italics added.) Nor is Husband's statement that there "really" is "a serious risk" that he "could lose" his position with Logicon if the trial court failed to award him the entire community-owned block of Logicon stock substantial evidence to support this finding within the context of all the evidence in this case—especially his clear and unequivocal testimony twice admitting that his possession of the stock as a power base was not critical but merely helpful. (See *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10]; *Gray* v. *Reeves* (1978) 76 Cal.App.3d 567, 573-574 [142 Cal.Rptr. 716]; *Mikialian* v. *City of Los Angeles* (1978) 79 Cal.App.3d 150, 158, 160-163 [144 Cal.Rptr. 794]. Consequently, this finding too is not binding upon us.

## 2. *Economic Circumstances do not Warrant Failure to Recognize Wife's Interest in the Stock*

The distinctive feature of California marital property law is that the marital community is viewed as a partnership in which the spouses are equal partners. It has long been recognized in California "that the marriage, in respect to property acquired during its existence, is a community of which each spouse is a member, equally contributing by his or her industry to its prosperity, and possessing an equal right to succeed to the property after dissolution." (*Meyer* v. *Kinzer* (1859) 12 Cal. 247, 251.) "The spouses are seen as contributing equally to acquisition regardless of the actual division of labor in the marriage and regardless of which spouse actually 'earned' the property." (Prager, *The Persistence of Separate Property Concepts in California's Community Property System* (1976) 24 UCLA L.Rev. 1, 6; Cf. *In re Marriage of Morrison, supra*, 20 Cal.3d at p. 452; *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 898 [101 Cal.Rptr. 295]; *Enfield* v. *March & McLennan* (Aug. 10, 1977, WCAB Panel Decision; 47 SF 250-115) 43 Cal.Comp.Cases 117.) Both spouses have "present, existing and equal" interests in community property (Civ. Code, § 5105) and the spouses have the same rights of management and control. (Civ. Code, § 5125.)

The equal division of the community property of the spouses, upon dissolution of marriage, appears to be an implicit recognition of this equality in interest that prevailed during marriage. (See Prager, *Sharing Principles and the Future of Marital Property Law* (1977) 25 UCLA L.Rev.

1.) Equal division is certainly the fundamental objective of the Family Law Act in this respect. (*In re Marriage of Juick, supra,* 21 Cal.App.3d at p. 427; *In re Marriage of Tammen* (1976) 63 Cal.App.3d 927, 930 [134 Cal.Rptr. 161].) The theory behind such division is that "in disposing of the property, a dissolution of marriage should be treated much like the dissolution of a business partnership. Regardless of the economic circumstances of business partners or of their moral conduct during the existence of the partnership, on dissolution the partners receive a portion of the assets commensurate with their respective partnership interests." (Attorney's Guide to Family Law Act Practice (Cont. Ed. Bar 1972) § 5.6, p. 250.) Thus Civil Code section 4800, subdivision (a), provides that upon the dissolution of marriage, the court shall "divide the community property . . . of the parties . . . equally."

██ This subdivision establishes equal division as the general rule both in terms of the method of division and the result to be achieved. For division by any method other than by partition into equal portions (equal in kind division) will result in the spouses receiving *different* property even though they receive property of mathematically equal value. Methods of division other than division in kind can achieve no more than "a substantially equal division of the property" and therefore are permitted under Civil Code section 4800, subdivision (b)(1), only "[*w*]*here economic circumstances warrant.*" Pursuant to this subdivision, "the court may award *any asset* to *one party* on such conditions as it deems proper *to effect* a *substantially equal division* of the property." (Italics added.) Thus the trial court may divide the community property, where warranted, by methods such as awarding an asset to one spouse conditioned upon later payments or making offsetting awards of the community assets. But even when property is divided pursuant to this subdivision the spouses must receive property of at least substantially equal value. And this requirement has been construed to mean essentially equal in value. (*In re Marriage of Juick, supra,* 21 Cal.App.3d at pp. 427-429; *In re Marriage of Tammen, supra,* 63 Cal.App.3d at pp. 930-931; *California's Divorce Reform: Its Effect on Community Property Awards* (1970) 1 Pacific L.J. 310, 318-319; See *In re Marriage of Morrison, supra,* 20 Cal.3d at p. 456.)

In the case at bench Wife contends that the economic circumstances do not warrant a substantially equal division pursuant to Civil Code section 4800, subdivision (b)(1), and that even if the trial court was empowered to make such a division she did not receive property substantially equal in value to that received by Husband.

In evaluating these contentions the meaning of "[w]here economic circumstances warrant" must first be considered. Since this clause triggers an exception to the general rule of equal in kind division it should be strictly construed so that the exception does not become broader than the basic rule itself. (Code Civ. Proc., § 1858; *City of National City* v. *Fritz* (1949) 33 Cal.2d 635, 636 [204 P.2d 7]; *Marrujo* v. *Hunt* (1977) 71 Cal.App.3d 972, 977 [139 Cal.Rptr. 220].) Moreover, a narrow construction of the clause is required because the award of an asset to one spouse alone involves the elimination of the other spouse's prior equal interest in that asset. (See Civ. Code, § 5105; Prager, *The Persistence of Separate Property Concepts in California's Community Property System* (1976) 24 UCLA L.Rev. 1, 81-82.)

There are other policy considerations, as well, which favor a narrow reading of the phrase "economic circumstances." Equal in kind division avoids valuation problems. It eliminates the need to place a disproportionate risk of loss on either party, is impervious to charges of favoritism, and apportions the risk of future tax liabilities equally (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 750 [131 Cal.Rptr. 873, 552 P.2d 1169]; *Future Tax Consequences in Community Property Divisions: An Analysis of the California Approach* (1977) 24 UCLA L.Rev. 1354, 1381-1382). It also accomplishes an immediate division of property and provides the parties with the most post-dissolution economic stability.

Finally, the legislative history of the Family Law Act in the form of the Assembly Committee Report thereon also supports a limited reading of the phrase "economic circumstances." The report indicates that the application of the exception is confined to situations where an asset cannot be divided *without impairment.* "The new act requires an equal division in all but two specific instances[4] without regard to the reasons for the dissolution. The first exception [Civ. Code, § 4800, subd. (b)(1)] is that *if the nature of the property is such* that *an equal division is not possible without impairment of a principal asset,* then the court shall have

---

[4]As previously indicated, the value of the interests awarded the parties upon the dissolution of marriage must always be at least substantially equal. The mention of exceptions in the committee report is in terms of circumstances which allow exceptions to the absolutely equal division *method* of division (the equal in kind method of division). These circumstances do not permit the spouses to receive assets of disproportionate value. The report makes this clear on the following page when it suggests alternatives by which the spouse who loses his or her interest in an asset under the "substantially equal" exception would receive compensation equal in value to the lost interest. (Assem. Com. Rep. on Assem. Bill No. 538 and Sen. Bill No. 252 (The Family Law Act), Com. on Judiciary, 4 Assem. J. (1969 Reg. Sess.) p. 8062; see also 1 Assem. J. (1970 Reg. Sess.) p. 787.)

discretion to establish conditions which will result in substantially equal division."[5] (Italics added.) The report then goes on to give the example of an ongoing family business and to say "[I]t could well be destructive to award each spouse a half interest therein." (Assem. Com. Rep. on Assem. Bill No. 538 and Sen. Bill No. 252 (The Family Law Act), Com. on Judiciary, 4 Assem. J. (1969 Reg. Sess.) at p. 8061.) A later Assembly Committee Report adds the example of the award of the family residence to the spouse with the custody of minor children as another situation where economic circumstances warrant the application of this exception to the equal division requirement. (1 Assem. J. (1970 Reg. Sess.) p. 787.)

Thus Civil Code section 4800, subdivision (b)(1), has been characterized as the "single asset proviso" (*In re Marriage of Juick, supra,* 21 Cal.App.3d at p. 428) and been said to apply "where a major item of community property" is "not reasonably subject to division." (*In re Marriage of Tammen, supra,* 63 Cal.App.3d at p. 930.) We construe this statement to mean that the "economic circumstances" which empower a court to award an asset to one spouse alone are limited to those circumstances where the asset is not subject to division without impairment and we so hold.

■ But the determination whether an asset is subject to division without such impairment must be flexibly made. (See 1 Assem. J. (1970 Reg. Sess.) p. 786.) This is evident from the two examples given by the legislative committee report. In the first example impairment of the asset is found in the deadlock inherent in the award to former spouses of equal interests in an ongoing family business. The second example recognizes impairment where the asset satisfies a critical need of one of the spouses and there is no adequate replacement for it.

■ We regard the block of stock at issue as a single asset.[6] Though it is usually possible to divide such an asset in kind, it does not follow that it

[5]The second exception to the equal division requirement, the situation where community funds have been deliberately squandered or misused by one spouse (Civ. Code, § 4800, subd. (b)(2)) is not relevant here. (Assem. Com. Rep. on Assem. Bill No. 538 and Sen. Bill No. 252 (The Family Law Act), Com. on Judiciary, 4 Assem.J. (1969 Reg. Sess.) at p. 8062.)

A third exception was added in 1970. (Stats. 1970, ch. 962, § 3.5, p. 1726.) That subdivision (Civ. Code, § 4800, subd. (b)(3)) grants a court power to award property to one spouse alone on conditions it deems proper if both (1) the net value of community and quasi-community property is less than $5,000 and (2) one spouse cannot be located through the exercise of reasonable diligence. This exception is also inapplicable to this case.

[6]We regard it as highly significant, however, that the shares of stock at issue are fungible and therefore the block of stock is easily divided in kind. There are many assets

always can be done without impairment. Were the stock at issue here stock in a close corporation (Corp. Code, § 158) or shown to be essential to Husband's ability to earn a living then economic circumstances would perhaps warrant the award of the entire block of stock to Husband upon conditions effecting a substantially equal division of property. A close corporation is the functional equivalent of a family business. An asset which is essential to a party's ability to earn a living satisfies a critical need which cannot be satisfactorily replaced.[7]

But where, as here, the stock is traded on a national exchange and its possession is merely "helpful," economic circumstances do *not* warrant the award of the entire block to one spouse. The stock is subject to division without impairment and both spouses have economic concerns which cause them to desire the stock. The concerns of each is worthy of the same consideration. (See *In re Marriage of Jafeman, supra,* 29 Cal.App.3d at p. 266.) Under the circumstances of this case Wife has a right to an equal in kind award of her interest in the Logicon stock or, in other words, an equal partition of the block of stock.[8] (Cf. *In re Marriage of Hopkins* (1977) 74 Cal.App.3d 591, 597-598 [141 Cal.Rptr. 597]; *In re Marriage of Holmgren* (1976) 60 Cal.App.3d 869, 872-873 [130 Cal.Rptr. 440].)

Even assuming arguendo that economic circumstances did warrant a division devised pursuant to Civil Code section 4800, subdivision (b)(1),

---

such as parcels of real property, automobiles, and jewelry which simply are not ordinarily subject to such division.

[7]Award of stock upon dissolution where it is shown to be essential to earning a living is analogous to Civil Code section 5125, subdivision (d)'s grant during marriage of sole management and control to the spouse who is "operating or managing a business or an interest in a business which is community personal property." In both cases the need of the one spouse overrides recognition of the other spouse's equal interest in the asset.

[8]Husband cites the cases of *Dallman* v. *Dallman* (1958) 164 Cal.App.2d 815 [331 P.2d 245]; *Cronk* v. *Cronk* (1962) 210 Cal.App.2d 683 [27 Cal.Rptr. 229]; and *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557 [63 Cal.Rptr. 13, 432 P.2d 709], in support of his assertion that Wife has no right to an equal in kind division. But these cases are inapposite. Each was decided prior to the passage of the Family Law Act. Moreover, the "divorces" in both *Dallman* and *Cronk* were granted on grounds (extreme cruelty and adultery) (*Dallman* v. *Dallman, supra,* 164 Cal.App.2d at p. 818; *Cronk* v. *Cronk, supra,* 210 Cal.App.2d at p. 685) which empowered the trial court under former Civil Code section 146, subdivision (a)—the provision then in effect—to *assign* community property "to the *respective parties* in such proportions *as the court,* from all the facts of the case, and the conditions of the parties, *may deem just.*" (Italics added.) In contrast, the Family Law Act—Civil Code section 4800, subdivision (b)(1)—empowers the trial court to assign a single asset to one of the respective parties *only* where economic circumstances warrant. The stock at issue in *Weinberg* was not even community property; rather it was the wholly owned separate property of one of the spouses. (*Weinberg* v. *Weinberg, supra,* 67 Cal.2d at p. 566, fn. 2.)

the spouses did not receive property of substantially equal value as is required by this subdivision. No award was made as such to offset the award of the stock to Husband.[9] Moreover, the judgment awarding the stock is inequitable in terms of the financial position in which it places the parties, the security they are given, and their tax consequences. (See *In re Marriage of Hopkins, supra,* 74 Cal.App.3d at p. 598.) If this award had been made upon the dissolution of a business partnership its impropriety would be beyond dispute. Its impropriety should be equally obvious in the marital context.

The most glaring inequity stems from the tremendous financial advantage that accrues to Husband from the fact that under the judgment he alone decides whether to advance the times of payment for or release of the stock. As already noted, the value of Logicon stock is extremely variable. At the time of trial its value was $4 a share. On March 1, 1978, the price was $13.75 per share while over the 52 weeks prior to that date the stock rose as high as $17.625 per share and fell as low as $9 per share. Should Husband choose to exercise his option to make an immediate payment for all of the 33,152 shares representing Wife's interest, his timing could decrease the amount needed to pay Wife by hundreds of thousands of dollars. In his position as senior vice president, concerned with general corporate management and planning, he is the prototypic corporate insider—privy to information that would allow him to maximize the value of the timing of the exercise of his option.

The structure of the judgment also deprives Wife of control over decisions affecting her financial future. She does not have an interest that she may sell, pledge or hypothecate. Instead she can only wait to receive funds from Husband, payable to her at least partially in his discretion. Although this scheme, especially the $4 floor on the value of her interest, is no doubt designed to give her the advantage of any rise in the value of the stock, while protecting her interest, it is inconsistent with the Legislature's stated objective that the woman's "approaching equality with the male should be reflected in the law governing marriage dissolution and in the decisions of courts with respect to matters incident

---

[9]The only asset ever held by the community even remotely comparable in value was the family residence. This asset was sold prior to the dissolution proceedings and the proceeds divided equally between the parties.

to dissolution."[10] (Assem. Com. Rep. on Assem. Bill No. 538 and Sen. Bill No. 252 (The Family Law Act), Com. on Judiciary, 4 Assem. J. (1969 Reg. Sess.) p. 8062; *In re Marriage of Jafeman, supra,* 29 Cal.App.3d at pp. 265-266; see Cal. Const., art. I, § 8; *Arp* v. *Worker's Comp. Appeals Bd.* (1977) 19 Cal.3d 395, 403-405 [138 Cal.Rptr. 293, 563 P.2d 849]; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 20 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]; Karst, *Foreword: Equal Citizenship Under the Fourteenth Amendment* (1977) 91 Harv.L.Rev. 1, 53-59.)

Also, the unsecured nature of a compensatory award is recognized as a factor to be considered in evaluating the value of the compensation given a party for his or her interest in an asset upon dissolution of marriage. (*In re Marriage of Tammen, supra,* 63 Cal.App.3d at p. 931.) Here the decree gives Wife no security. Should Husband fall into financial difficulties, Wife stands in no better position than any other general unsecured creditor. Husband, on the other hand, has no security concerns as he is awarded the stock itself.

Finally, the tax consequences which occur in connection with this decree fall with undue harshness upon Wife. ■ The division of community property between the parties is not a taxable event. (*Commissioner of Internal Revenue* v. *Mills* (9th Cir. 1950) 183 F.2d 32 [19 A.L.R.2d 856].) Husband's retention of the stock gives rise to no tax liability. It is clear, however, since there are no remaining community funds from which Husband can pay for Wife's interest in the stock, Husband must make his payments to her from his separate property. To the extent that pursuant to a decree of dissolution one party receives " 'separate cash or other separate property, rather than community assets, in exchange for portions of his community property, he has sold or exchanged such portions and *gain,* if any, *must be recognized thereon.*' " (Italics added.) (*Carrieres* v. *Commissioner of Internal Revenue* (9th Cir. 1977) 552 F.2d 1350, 1351.) Although no evidence was received upon the stock's basis, it is apparent that the gain recognized on valuable stock acquired during a corporation's infant years would constitute a large percentage of that stock's value. Thus, the judgment imposes a substantial tax burden upon Wife.

---

[10] While a promissory note would have deprived Wife of any rise in the stock's value, a court may take into account the speculative value of an asset in fixing its valuation and a promissory note has the advantage of being marketable at the time dissolution is granted. (See *In re Marriage of Tammen, supra,* 63 Cal.App.3d at p. 931.)

We note that: (1) we are not considering a hypothetical inequality here; (2) the tax consequences are beyond Wife's control, would be immediate and specific upon the purchase of the stock contemplated by the judgment and would occur in connection with the dissolution judgment; and (3) our consideration of the tax consequences is restricted to recognizing the existence of a drastic inequality. (Compare *Weinberg* v. *Weinberg, supra,* 67 Cal.2d at p. 567; *In re Marriage of Fonstein, supra,* 17 Cal.3d at pp. 749, fn. 5, 750-751; see *Future Tax Consequences in Community Property Divisions: An Analysis of the California Approach* (1977) 24 UCLA L.Rev. 1354, 1358-1364, 1377-1378.)

## DISPOSITION

The judgment is reversed and the case remanded for further proceedings consistent with the views expressed herein.

Allport, J., and Potter, J., concurred.