[Civ. No. 65867. Second Dist., Div. Seven. May 10, 1983.]

In re the Marriage of MONA and JOHN A. HEWITSON.
MONA HEWITSON, Respondent, v.
JOHN A. HEWITSON, Appellant.

COUNSEL

Hill, Farrer & Burrill, Todd M. Sloan and Scott L. Gilmore for Appellant.

Pistone, Monaco & Petrovits, Frank Pistone and James J. Petrovits for Respondent.

OPINION

**THOMPSON, J.**—Husband appeals from an interlocutory judgment of dissolution of marriage. The parties were married on August 17, 1950, and separated on March 27, 1978. The only issues on this appeal involve the equal division of community property.[1]

A three-day trial was held on January 23, 26 and 27, 1981. The values assigned to the community property, which are set forth in the trial court's findings, were arrived at by the stipulation of the parties, except as to the value of the Ronan commercial building and Ronan Engineering Company (hereafter Ronan), a closely held corporate business owned by the parties. The parties further stipulated as to the division of all community property except the promissory notes in favor of the parties from Ronan. At issue throughout the proceedings below was the value of Ronan. The trial court found that the present market value of Ronan is $9,632,768. The trial court's determination in this regard is the principal issue on appeal.

---

[1]Husband's notice of appeal is from the whole judgment. Since no argument concerning the issues of dissolution and spousal support is made on appeal, we assume that the husband has abandoned any complaints he may have had as to those matters. (See *In re Marriage of Hopkins* (1977) 74 Cal.App.3d 591, 595, fn. 1 [141 Cal.Rptr. 597].)

## CONTENTIONS

Husband's contentions on appeal are as follows:

(1) The trial court improperly relied on the price-earnings ratio of publicly traded corporations to determine the value of Ronan.

(2) The trial court improperly applied the price-earnings ratio of publicly traded corporations, the shares of which were traded on stock-for-stock transactions rather than all cash transactions, to determine the value of Ronan.

(3) The finding that the present market value of Ronan is $9,632,768 is not supported by substantial evidence.

(4) The trial court's evaluation of Ronan should be modified on appeal.

Wife's contentions on appeal are as follows:

(1) The trial court did not rely exclusively on the price-earnings ratio of publicly traded corporations as a method to determine the value of Ronan.

(2) The failure of husband to object to the price-earnings ratio method constitutes a waiver of objection.

(3) The case of *In re Marriage of Lotz* (1981) 120 Cal.App.3d 379 [174 Cal.Rptr. 618], is distinguishable from the instant case and not binding on the trial court.

## SUMMARY

We hold that the trial court's reliance solely on the price-earnings ratio approach to determine the value of Ronan was prejudicial error.

We further hold the trial court improperly applied the price-earnings ratio approach by determining the multiples thereof from stock prices of corporate acquisitions rather than the market prices of stock listed on an exchange or over-the-counter.

Moreover, we hold section 4800, subdivision (a) of the Family Law Act (Civ. Code, § 4800, subd. (a)) is satisfied when the investment value of closely held shares is determined rather than their market value.

The finding that the present market value of Ronan is $9,632,768 is not supported by substantial evidence. We conclude, therefore, there was not an equal

division of community property. Accordingly, we will reverse the judgment, so far as it determined the property rights of the parties, and direct the trial court to redetermine those rights in accordance with the views expressed in this opinion.

FACTS

In May 1959 husband formed Ronan, which is in the business of designing and manufacturing monitoring devices including annunciators. He is the president and chief executive officer of Ronan. Its main plant is located in Woodland Hills, California, with two wholly owned foreign subsidiaries, one located in Toronto, Canada, and the other located in Washington, England. All of the outstanding shares of stock of Ronan are owned by the parties.

At trial, each party presented the written report and testimony of an expert witness regarding the value of Ronan. Each of the expert witnesses relied principally on the price-earnings ratio method to determine the value of Ronan as of August 31, 1980.

Wife's expert witness set the value of Ronan at $9,632,768. In his use of the price-earnings ratio method, in order to arrive at a "multiple" number, he used multiples derived from corporate acquisitions of public corporations. His evaluation was also based on book value in which he determined the value of Ronan by multiplying its book value by a "multiple" number. This "multiple" number also was obtained by using the acquisition prices of comparable publicly traded corporations to determine the average multiple of their book value. Additionally he used the capitalization of anticipated earnings method, not to formulate his opinion but only as a check against the other methods, and employed a capitalization rate of 10.5. This figure was the average capitalization rate of the same two public corporations which had been used in connection with the price-earnings ratio method. The capitalization rate times the net income of Ronan determined its value.

Husband's expert witness valued Ronan at $4,021,000. His evaluation was based principally on the use of the price-earnings method. He also used, but did not rely on, the methods called excess earnings and cash flow.

At the conclusion of the trial, the trial court allowed each party until February 16, 1981, to submit written argument. Thereafter, the case was deemed submitted for decision.

On May 1, 1981, the trial court issued its notice of intended decision. It indicated, among other things, that the value of Ronan was $9,632,768. It did not explain or give the method of arriving at the value of Ronan. On May 8, 1981, husband filed a request for findings of fact and conclusions of law.

On June 15, 1981, in the case of *In re Marriage of Lotz, supra,* 120 Cal.App.3d 379, involving a marriage dissolution proceeding, the Second District held that it was improper to determine the value of a closely held corporation by the sole use of the price-earnings ratio of publicly traded corporations, even considering any attempt to adjust the formula, since there are enormous differences between the two types of corporations.

On July 20, 1981, husband filed a motion to strike wife's proposed findings of fact and conclusions of law and for reconsideration of the trial court's intended decision based upon the decision in the case of *In re Marriage of Lotz,* together with objections to wife's proposed findings of fact and conclusions of law.

A hearing on husband's motion and objections was held on August 17, 1981. Husband contended, inter alia, that each valuation method used by wife's expert witness involved the use of data from publicly traded corporations, prohibited by the *Lotz* case. Husband claimed that the trial court had the option of either making a different evaluation of Ronan, after disregarding all evaluation evidence which relied on publicly traded corporations, or reopening the case. Wife countered that any error was invited by husband's use of the price-earnings method and that *Lotz* was not applicable. The trial court took the matter under submission.

On November 13, 1981, the trial court denied the motion for reconsideration and signed and filed the wife's proposed findings of fact and conclusions of law and judgment. The findings of fact provided, in part, as follows:

"9. The parties have agreed that several methods of evaluation of such business would be proper and have both utilized a price earnings ratio method to value the business.

"10. William Mestler, an appraiser retained by [wife], was qualified by the court as an expert witness and testified.

". . . c. Mr. Mestler placed a present market value on Ronan as $9,632,768.00. The present market value of Ronan would be the same using a valuation on book value, capitalization of anticipated earnings or a present cash sale in the market place. . . .

"11. The court finds that the present market value of Ronan Engineering Company is $9,632,768.00. . . ."

I

## VALUATION OF SHARES IN A CLOSELY HELD CORPORATION

■ ■■■■ A brief discussion of the different methods used to determine the investment value and market value of shares in a closely held corporation,[2] and the difference between them, is necessary to understand this most difficult legal problem facing the trial courts.

### A. DETERMINATION OF INVESTMENT VALUE OF CLOSELY HELD SHARES

The three basic approaches, or their variations, which have been recognized in determining the investment value of closely held shares are commonly termed (1) capitalization of earnings approach[3] (see *Worthen* v. *United States* (D.Mass. 1961) 192 F.Supp. 727; Cohan, *Valuation of Interests in Closely Held Businesses* (1966) 44 Taxes 504, 508), (2) dividend paying capacity[4] (see *Estate of Goar* v. *Comm'r.* (1950) 9 T.C.M. 854; *Righter* v. *United States, supra,* 439 F.2d 1204, 1210), and (3) book value[5] or net asset value[6] (see *Estate*

---

[2]The term "close" or "closely held" corporation has been defined in various ways. (See, e.g., Corp. Code, § 158; O'Neal, Close Corporations (2d ed. 1971) § 1.02.) For our purposes, the term "close" or "closely held" corporation means a corporation which has few shareholders and whose shares are not generally traded in the securities market.

[3]*Capitalization of earnings:* This method, used primarily to calculate earnings value, requires the multiplication of the "normal earnings" of the corporation by a capitalization rate (multiplier) which reflects the stability of the past and the predictability of the future corporate earnings. (See Hartwig, *Valuing an Interest in a Closely-Held Business for the Purpose of Buy/Sell Agreements and for Death Tax Purposes* (1974) 26th U.So.Cal. 1974 Fed. Tax Inst. 256-264; O'Neal, *Restrictions on Transfer of Stock in Closely Held Corporations: Planning and Drafting* (1952) 65 Harv.L.Rev. 773, 802-803.)

[4]*Capitalization of dividends:* This method seeks to determine the dividend paying capacity as a measure of value for closely held corporations. (See, e.g., *Central Trust Company* v. *United States* (Ct.Cl. 1962) 305 F.2d 393; *Righter* v. *United States* (Ct.Cl. 1971) 439 F.2d 1204, 1210 [22 A.L.R.Fed 1].) Its application is identical to the capitalization of earnings approach. There are several reasons why this approach should be given only minimal consideration. The primary reason is that dividend payments are a direct function of the earnings of the corporation. The earnings represented by dividends, therefore, would in reality be capitalized twice if a combination of earnings value and dividend payments were used in the final valuation. (See Korner, *Issues and Problems in Valuing Closely Held Business Interests for Estate Tax Purposes, Especially Partnership Interests* (1972) 30th N.Y.U. Inst. Fed. Tax 185, 192 (hereafter Korner, *Issue and Problems*); Olson, *Valuation of a Closely Held Corporation* (Aug. 1969) 128 J. Accountancy 35, 38-39.)

[5]*Book value:* This method involves determining the value of the stock simply by taking the value of the underlying assets as shown by the company's balance sheet, and prorating such value to the number of outstanding shares. (Korner, *Issues and Problems, supra,* at p. 190.)

[6]*Net asset value:* This value is determined by first adjusting the balance sheet accounts (book value) as of the valuation date to reflect the actual economic value of the assets and the genuine liabilities of the business. Next, the adjusted liabilities are deducted from the adjusted assets. The result is the net asset value, which is divided by the number of outstanding closely held shares. The physical asset adjustments are necessary because the assets are listed by their historical costs (i.e., book value). Such adjustments are further necessary to reflect the "going

*of Rowell* (1955) 132 Cal.App.2d 421, 428 [282 P.2d 163]). The application of these approaches, or their variations, will determine the investment value of the closely held shares, not their market value. (See Fellows & Painter, *Valuing Close Corporations For Federal Wealth Transfer Taxes: A Statutory Solution to the Disappearing Wealth Syndrome* (1978) 30 Stan.L.Rev. 895, 901-903, 910.) This difference was observed in *Estate of Rowell, supra,* which involved the net worth valuation of closely held shares, where the court stated that the fair market value is "quite distinct from the ratio between the number of shares issued and the book value, or the value of the corporation's property." (132 Cal.App.2d at p. 429.)

## B. Determination of Market Value of Closely Held Shares

The market value of publicly held stock which is actively traded on an exchange may be ascertained by verification of the price at which the stock was traded on the valuation date. (See, e.g, *In re Marriage of Brigden* (1978) 80 Cal.App.3d 380, 385, fn. 3 [145 Cal.Rptr. 716].) In contrast, close corporation stock is not actively traded and, therefore, has no established market value. To establish a *hypothetical* market value for close corporation shares, two methods are used. One method is through the use of recent sales of the unlisted stock, which were made in good faith and at arm's length, within a reasonable period either before or after the valuation date. (*Fitts' Estate* v. *Commissioner of Internal Revenue* (8th Cir. 1956) 237 F.2d 729, 731; see, e.g., *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 600 [153 Cal.Rptr. 423, 591 P.2d 911].) The other method is the price-earnings ratio approach.[7] (*Righter* v. *United States, supra,* 439 F.2d 1204, 1207.)

The most extensive use of the price-earnings ratio method has been in the evaluation of closely held shares of stock to determine their fair market value[8] for federal tax purposes. (See Annot., Valuation of Closely Held Stock for Federal Estate Tax Purposes Under Section 2031(b) of Internal Revenue Code of 1954 (26 USCS § 2031(b)), and Implementing Regulations (1975) 22 A.L.R.Fed. 31, 85-91.) Internal Revenue Code section 2031 pro-

---

concern" value of the assets as they function within the business. (See Comment, *Valuation of Shares in a Closely Held Corporation* (1976) 47 Miss.L.J. 715, 722-723.)

[7]This method, which attempts to create a hypothetical market value for close corporation shares, involves the multiplication of the price-earnings ratios of comparable actively traded corporations, which are listed on an exchange, by the earnings per share of the closely held corporation. (See O'Neal, *Restrictions on Transfer of Stock in Closely Held Corporations: Planning and Drafting, supra,* 65 Harv.L.Rev. 773, 801, fn. 104.)

[8]Fair market value is defined by the United States Treasury Regulations as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell" and both having reasonable knowledge of relevant facts. (3 Fed. Tax Reg. 82, § 20.2031-1(b), p. 568; *Fitts' Estate* v. *Commissioner of Internal Revenue, supra,* 237 F.2d 729, 731.) This definition is generally accepted in California. (See *Estate of Rowell, supra,* 132 Cal.App.2d 421, 429.)

vides a statutory guide to the evaluation of stock in a closely held corporation. It states that the value of closely held stock and securities "shall be determined by taking into consideration, in addition to all other factors, the value of stock or securities of corporations engaged in the same or a similar line of business which are listed on an exchange." (Int. Rev. Code, § 2031(b); *Righter* v. *United States, supra,* 439 F.2d 1204, 1207.)

In the light of this statutory directive, the Internal Revenue Service promulgated Revenue Ruling 59-60 (1959-1 Cum. Bull. 237). It expressly listed eight factors[9] to consider in valuing shares of closely held stock with a general discussion of each factor. One of the factors is the comparison of the close corporations' shares with the selling prices of shares of reasonably comparable corporations listed on an exchange. In its general discussion of the comparative method with similar listed shares, the Revenue Ruling expressly provides that stocks listed on an exchange are to be considered first and, if sufficient comparable companies whose stocks are listed on an exchange cannot be found, other comparable companies which have stocks actively traded over-the-counter may be used.

## II

### THE TRIAL COURT'S VALUATION OF RONAN WAS BASED ON AN IMPROPER APPLICATION OF THE PRICE-EARNINGS RATIO METHOD.

█ Husband contends the wife's expert did not properly apply the price-earnings ratio method to determine the market value of Ronan because he used the prices of stock which were derived from the corporation acquisitions of comparable companies, rather than the stock prices of comparable companies, listed on a stock exchange or over-the-counter. We agree.

In this case the evidence shows that wife's expert used multiples derived from corporate acquisitions of comparable companies based on an exchange of stock

---

[9]These listed factors are:

"(a) The nature of the business and the history of the enterprise from its inception.

"(b) The economic outlook in general and the condition and outlook of the specific industry in particular.

"(c) The book value of the stock and the financial condition of the business.

"(d) The earning capacity of the company.

"(e) The dividend-paying capacity.

"(f) Whether or not the enterprise has goodwill or other intangible value.

"(g) Sales of stock and the size of the block of stock to be valued.

"(h) *The market price of stocks of corporations engaged in the same or a similar line of business having their stocks actively traded in a free and open market, either on an exchange or over-the-counter.*" (Italics added.)

For an explanation of these factors found in Revenue Ruling 59-60, see Olson, *Valuation of a Closely Held Corporation, supra,* 128 J. Accountancy, pages 35, 38-39.

in the acquiring company in his application of the price-earnings ratio method used to determine the market value of Ronan. We conclude that this approach is not sound for it defeats the very purpose of the price-earnings ratio method.

The hypothetical market value for closely held shares cannot be created where the multiples of the price-earnings ratio are derived from corporate acquisitions of comparable companies. In this situation, cash is rarely paid for the acquired company. The company is usually acquired in exchange for stock in the acquiring company.[10] The shares used to acquire the comparable company are normally issued without any substantial effect on the stock exchange price of the acquiring company. Hence, the acquiring company will pay a premium to acquire the company because (1) it is paying cheaper than cash consideration, and (2) such a controlling interest in the acquired company will insure the safety of its investment. (See Small, *Corporate Combinations Under The New California General Corporation Law* (1976) 23 UCLA L.Rev. 1190, 1215-1217; Fellows & Painter, *Valuing Close Corporations For Federal Wealth Transfer Taxes: A Statutory Solution To The Disappearing Wealth Syndrome, supra,* 30 Stan.L.Rev. 895, 901, 903-906.) Under these circumstances, the hypothetical market value, reflecting actively traded shares of stock, either on an exchange or over-the-counter, cannot be ascertained.

We find, therefore, the wife's expert did not properly apply the price-earnings ratio method to determine the market value of Ronan, and the trial court erred in relying on it in its determination of Ronan's value.

III

THE TRIAL COURT'S RELIANCE SOLELY ON THE PRICE EARNINGS
RATIO METHOD TO DETERMINE THE VALUE OF RONAN WAS IMPROPER

Husband further contends that the court erred in relying on the price-earnings ratio of publicly traded corporations to determine the value of Ronan, a closely held corporation owned wholly by the parties.

In dividing the community property equally under the mandate of Civil Code section 4800, subdivision (a), the trial court is required to make specific findings concerning the nature and value of all assets of the parties before the court, unless there is a division of the property in kind. (*In re Marriage of*

---

[10]An exchange "reorganization" is defined in Corporation Code section 181, subdivision (b) as: "The acquisition by one corporation in exchange in whole or in part for its equity securities (or the equity securities of a corporation which is in control of the acquiring corporation) of shares of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation. . . ."

Control is defined for the purposes of section 181 as "ownership directly or indirectly of shares possessing more than 50 percent of the voting power." (Corp. Code, § 160, subd. (b).)

*Behrens* (1982) 137 Cal.App.3d 562, 572 [187 Cal.Rptr. 200]; *In re Marriage of Folb* (1975) 53 Cal.App.3d 862, 868 [126 Cal.Rptr. 306], disapproved on other grounds in *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 749, fn. 5 [131 Cal.Rptr. 873, 522 P.2d 1169]; *In re Marriage of Juick* (1971) 21 Cal.App.3d 421, 425-426 [98 Cal.Rptr. 324].)

■ The trial court's determination of the value of a particular asset is a factual one and, if there is substantial evidence to support it in the record, the determination must be upheld on appeal. (*In re Marriage of Folb, supra,* at p. 868.) If, however, such determination is based solely or in large part on the opinion of an expert, the determination will not be upheld on appeal, unless the opinion satisfies the standard of admissibility set forth in Evidence Code section 801. (See, e.g., *In re Marriage of Rives* (1982) 130 Cal.App.3d 138, 149-151 [181 Cal.Rptr. 572]; cf. *Solis* v. *Southern Cal. Rapid Transit Dist.* (1980) 105 Cal.App.3d 382, 389-390 [164 Cal.Rptr. 342].)

Evidence Code section 801,[11] dealing with the admissibility requirements of opinion testimony by an expert witness, provides in subdivision (b) thereof, three separate but related tests that a matter must meet to serve as a proper basis for an expert opinion. First, the information used must come from (a) the witness' personal observation, or (b) the witness' personal knowledge, or (c) an assumption of facts finding support in the evidence. Second, the matter upon which the opinion is based must be of a type upon which the expert may reasonably rely. Third, an expert may not base his opinion upon any matter held to be improper as the basis of an expert opinion by constitutional, statutory, or decisional law. (*People* v. *Plasencia* (1983) 140 Cal.App.3d 853, 857 [189 Cal.Rptr. 804]; See 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 29.3, pp. 997-999.)

■ In the instant case, the second and third tests of Evidence Code section 801, subdivision (b) are put in issue.

In determining the value of shares of a closely held corporation, it is error for a trial court to rely solely on the opinion of an expert regarding the value of closely held corporate shares where such opinion is based on the "price earnings ratio of publicly traded corporations," the so-called comparable company

---

[11]Evidence Code section 801 provides: "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is:

"(a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and

"(b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

method. (*In re Marriage of Lotz, supra,* 120 Cal.App.3d 379, 384.) The reason for such a rule is the unreliability of this method to determine the value of close corporation shares. First, it is extremely difficult, if not impossible, to find sufficiently comparable companies. (See *Righter* v. *United States, supra,* 439 F.2d 1204, 1207; Korner, *Issues and Problems, supra,* 30th N.Y.U. Inst. Fed. Tax 191-192.) Second, closely held corporations possess characteristics which make them inherently different from publicly held corporations, with the primary difference being the lack of marketability, i.e., liquidity of close corporation stock. (*In re Marriage of Lotz, supra,* 120 Cal.App.3d at p. 384.)[12] These differences undermine the basic assumption of the comparable company method that where a price-earnings ratio of a publicly held corporation is applied to a supposedly similar close corporation, it represents a valid determination of the market value of closely held corporate stock.

Thus, the second test of Evidence Code section 801, subdivision (b) is not met because, due to the enormous differences between the two types of corporations, the price-earnings ratio of publicly traded corporations is not the type of matter upon which an expert may reasonably rely in evaluating Ronan.

The singular use of this formula to determine the value of closely held corporate shares had been declared improper in *Lotz.* Hence, the third test is not met.

Under the circumstances, there was no adequate foundation for the expert's opinion testimony about the value of Ronan based on the use of the price-earnings ratio formula. Hence the trial court erred in relying upon it.

The issue arises, however, as to whether such error was prejudicial. Wife argues that the trial court did not rely exclusively on the price-earnings ratio method to evaluate Ronan, but also used other methods, as stated in finding of fact No. 10(c): ". . . The present market value of Ronan would be the same using a valuation on book value, capitalization of anticipated earnings or a present cash sale in the market place." But the evidence does not support wife's argument.

---

[12]As the *Lotz* court stated: "There are enormous differences between the two types of corporations. The sales volume of publicly traded corporations [is] much higher than the volume of closely held corporations. The stock in a publicly traded corporation has liquidity value because its owners can sell stock and get money in a matter of days, whereas the stock in 'Your Own Things' [closely held corporation] has no liquidity value. There is less risk in owning stock in public corporations because they can 'miss on two or three lines' [of clothing] without being hurt too much. Finally, the cost 'to go public' is between $150,000 and $200,000 for legal and accounting fees. Therefore, there is no substantial support for the use of the above formula [price-earnings ratio of public traded corporations] in evaluating a closely held corporation, even considering the attempts to adjust the formula." (*Id.,* at p. 384.)

In the use of the book value, wife's expert first used the acquisition prices of supposedly comparable publicly traded corporations to determine the average multiple of their book value. Using this selling price/book value ratio, he multiplied the book value of Ronan to determine its value. This approach contains the same infirmity as the price-earnings ratio, because of the enormous differences in the two types of corporations. In his use of the capitalization of earnings approach, wife's expert merely used the inverse of the price-earnings ratio, which was held improper in the *Lotz* case. (See Lamson, *Factors That Will Substantiate the Valuation of a Closely Held Corporation* (1971) 34 J. Tax. 226, 227.) As to a cash sale there is no evidence that Ronan could be sold in the market place for $9,632,768, or any price near that sum. Wife's expert testified that Ronan's value in an all cash sale was between $6 million and $7 million; approximately $3 million less than his appraisal value of $9,632,768. Thus, there can be no doubt the error was prejudicial. Accordingly, we hold that the finding of the present market value of Ronan is not supported by substantial evidence.

## IV

SECTION 4800, SUBDIVISION (a)
DOES NOT REQUIRE THE VALUE OF CLOSELY HELD SHARES
TO BE DETERMINED BY THEIR MARKET VALUE.

■ Husband further contends that section 4800, subdivision (a) of the Family Law Act (Civ. Code, § 4800, subd. (a)) requires the trial court to determine the present *market value* of Ronan. Husband also argues that inherent in the concept of present market value is the requirement that a valuation be based on all cash transactions. We cannot agree for the following reasons.

Neither of the two methods used to determine the hypothetical market value of closely held shares is available in this case. First, the evidence here does not show any recent sales of Ronan's stock. Second, the use of the price-earnings ratio approach as the sole method to determine the market value of Ronan is improper (as we have explained) and, hence, unavailable.[13] We hold, therefore, that the determination of the value of Ronan by its investment value, as distinguished from its market value, will satisfy the mandate of Civil Code section 4800, subdivision (a).

---

[13]See *In re Marriage of Lotz, supra,* 120 Cal.App.3d 379. If, however, the circumstances were to arise where the element of necessity and indications of relative reliability were present, it might be proper for the trial court to use the price-earnings ratio approach as a cross-check on the other approaches used to determine the value of closely held shares.

We recognize the determination of the value of infrequently sold, unlisted, closely held stock is a difficult legal problem. Most of the cases illustrate there is no one applicable formula that may be properly applied to the myriad factual situations calling for a valuation of closely held stock. (See, e.g., *Estate of Rowell, supra,* 132 Cal.App.2d 421, 428.) It is, therefore, incumbent upon a court faced with such a problem to review each factor that might have a bearing upon the worth of the corporation and hence upon the value of the shares. Unless there is some statutory or decisional proscription on their use, the factors listed in Revenue Ruling 59-60 (see p. 883, fn. 9) should be consulted and used to evaluate closely held stock.

V

### THE CASE OF IN RE MARRIAGE OF LOTZ IS APPLICABLE TO THE INSTANT CASE AND BINDING ON THE TRIAL COURT.

#### A. NEITHER ESTOPPEL NOR WAIVER APPLIES

██ Wife argues that both the husband's conduct in using the price-earnings ratio method and his failure to object to the wife's use thereof constitutes invited error on the grounds of estoppel and waiver. We disagree.

██ It is the general rule that where a party by his conduct induces the commission of error, he is estopped from asserting it on appeal as a ground for reversal. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 266-267, p. 4257.) Thus, if he offers inadmissible evidence, he cannot complain of its admission. (*Gjurich* v. *Fieg* (1913) 164 Cal. 429, 433 [129 P. 464].) Moreover, where inadmissible evidence is offered without objection, the failure to object constitutes a waiver, preventing appellate consideration of its erroneous admission. (*Russell* v. *Geis* (1967) 251 Cal.App.2d 560, 570 [59 Cal.Rptr. 569].)

██ In the instant case, the record reveals that each party relied primarily on the price-earnings ratio method to determine and prove Ronan's value and that such evidence was received without objection. The record further shows that each party assumed this approach was a proper method to determine the value of closely held shares. Our research shows this was a reasonable assumption. Until *Lotz* was decided on June 15, 1981, neither statutory nor decisional law of this state proscribed the use of the price-earnings ratio method to determine the value of closely held shares. Federal law, both statutory and decisional, approved its use.

Under the circumstances, we find that husband acted timely to exclude evidence of the price-earnings ratio approach. The record shows that, shortly after the *Lotz* decision, husband filed a noticed motion directing the trial court to the *Lotz* case and requesting the exclusion of all evaluation evidence which relied on publicly traded corporations. Accordingly, he is neither estopped, nor prevented by waiver, from raising the issue on appeal.

B. IN RE MARRIAGE OF LOTZ IS APPLICABLE TO THE INSTANT CASE AND DETERMINES THE TRIAL COURT'S RELIANCE ON THE PRICE-EARNINGS RATIO METHOD.

Wife contends the facts of Ronan are quite different from the facts of *Lotz,* and, therefore, *Lotz* is distinguishable from the instant case. Wife's argument is based on the difference in business size between Ronan and the business involved in *Lotz.* We find this argument without merit.

In *Lotz,* the court determined the price-earnings ratio method was unreliable, due principally to the absence of a ready market for closely held shares, not the difference in business size. (120 Cal.App.3d at p. 384.) Moreover, the difficulty in using comparable stock prices as a valuation technique is finding a group of publicly traded companies that are similar to the closely held corporation in question. (See e.g., *Righter* v. *United States, supra,* 439 F.2d 1204, 1207.)

We conclude, therefore, under the doctrine of stare decisis, *Lotz* is applicable and controlling on the trial court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Having concluded that *Lotz* is applicable and controlling, we find the property division is not equal.

Husband urges us to exercise our discretion to modify, rather than reverse, the interlocutory judgment and to reevaluate Ronan on the basis of the evidence in the record, after disregarding all evidence of value, based on the price-earnings ratio approach. (6 Witkin, Cal. Procedure, *supra,* §§ 569-570, pp. 4505-4508.) We decline to do so.

DISPOSITION

The interlocutory judgment of dissolution, so far as it determined the property rights of the parties, is reversed and remanded. The trial court is directed to reconsider the value of Ronan and to reconsider the division of community

property in accordance with the valuation of Ronan on remand and in light of our opinion.[14] In all others respects the judgment is affirmed.

Schauer, P. J., and Johnson, J., concurred.

---

[14]On remand, the trial court should consider the capital gain tax consequences, if any, in connection with the division of property. (See *In re Marriage of Clark* (1978) 80 Cal.App.3d 417, 422-424 [145 Cal.Rptr. 602].) We make no award of costs or attorney's fees on this appeal, and further direct the trial court to determine and apportion these items in such manner as is deemed to be in the interest of justice. (Cal. Rules of Court, rule 26.)